# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WG AMERICA COMPANY, a Pennsylvania limited liability company,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br><br>NETSUITE INC., a Delaware corporation,<br><br>　　　　　Defendants. | CASE NO.<br><br><br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

　　　　The Plaintiff, WG America, says as and for its Complaint against Defendant NetSuite Inc. as follows:

## INTRODUCTION

　　　　This is an action by the Plaintiff, a small, family-owned business, to recover damages that it has suffered as a direct and unavoidable result of the intentional and wrongful or, at least, reckless, conduct of NetSuite resulting in the Plaintiff's expenditure of over $300,000.00 for software and services that it has not used and cannot ever use.

## PARTIES

1.　　WG America (hereinafter the "Water Guy") is a Pennsylvania limited liability company with its principal place in Birdsboro, Pennsylvania.

1

2. NetSuite Inc. (hereinafter "NetSuite") is a Delaware corporation with principal offices in San Mateo, California.

## JURISDICTION AND VENUE

3. This action is based on the diversity of citizenship wherein the amount in controversy exceeds $75,000.00, exclusive of interest and costs. As such, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that the action is between citizens of different states.

4. This Court also has jurisdiction pursuant to 28 U.S.C. § 2201(a) in that there is an actual controversy and the Court is requested to declare the rights and other relations of the parties in this matter.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1301(b)(1) in that the Defendant is incorporated in and therefore resides in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

6. The Water Guy is in the business of delivering water and, to a much lesser extent, coffee, drinks, snacks and other items (collectively, "Water") and renting water "coolers", water filtration units and coffee brewers (collectively, "Rentals") to its customers.

7. The Water Guy is a family-owned business, formerly known as the Shinn Spring Water Company, which first opened its doors in 1990. It is the owner of the registered and incontestable trademark for "THE WATER GUY".

8. Today, the Water Guy has grown to serve approximately 11,000 customers in Pennsylvania, Maryland, District of Columbia, Delaware, New Jersey, Virginia and New York.

9. The heart of the Water Guy's business is its route delivery system that oversees the timely ordering, delivery (and pickup) of and billing for Water and Rentals.

10.     As the business grew, the Water Guy licensed software known as Route Manager Advanced™ ("RMA") from Advantage Route Systems, Inc. in Turlock, California to support its business.

11.     The Water Guy used RMA, augmented by QuickBooks™ and other "general purpose" applications to manage all aspects of the Water Guy's growing business.

12.     NetSuite is a cloud computing company founded in 1998 and was acquired by Oracle Corporation in 2016.  It is sometimes referred to as "Oracle/NetSuite."

13.     At all times relevant hereto, NetSuite offered cloud-based financials/ enterprise and resource planning ("ERP") software and customer resource management ("CRM") software, together with e-commerce features as a "Service" whereby its customers were given access to specified software through a so-called "Subscription Service."

14.     Initially, NetSuite provided its cloud-based solutions to large manufacturing businesses but subsequently introduced its solutions to other large and medium-sized businesses.

15.     In or around 2013, NetSuite introduced its Manufacturer's Mid-Market Edition to be marketed to businesses with fewer than 1,000 employees.

16.     NetSuite touted its Mid-Market Edition as offering to smaller businesses the same ERP, CRM and e-commerce functionality as its solutions for larger customers.

17.     NetSuite also represented that the Mid-Market Edition was suitable for use by – and was, in fact, being effectively used by – a large number of industries including "food and beverage" and "transportation and logistics".

18.     Early in 2015, the Water Guy began a search for an integrated ERP solution to replace RMA and its other aging applications.

19. In researching possible providers, the Water Guy learned that NetSuite marketed a "one solution" offering with a "seamless" ERP system based upon NetSuite's Manufacturer's Mid-Market Edition (the "NetSuite Software").

20. During its initial contacts with NetSuite, NetSuite represented to the Water Guy that NetSuite had experience in providing the NetSuite Software to businesses that were similar and in the same industry as the Water Guy.

21. Based upon NetSuite's initial representations, the Water Guy identified NetSuite as a potential provider of the integrated ERP system that it desired in or about April 2015.

22. Once the Water Guy identified NetSuite as a potential provider of an integrated ERP/CRM/e-commerce solution, the Water Guy undertook a 16-month process to educate NetSuite regarding its specific requirements (the "Requirements") and to obtain NetSuite's confirmation that the NetSuite Software could indeed meet all of the Requirements.

23. As a first step in this process, the Water Guy, commencing on or about April 9, 2015, sent a detailed, written descriptions of its business operations and the Requirements for its integrated ERP/CRM/e-commerce solution to NetSuite.

24. Among those Requirements were the following which were "Core Requirements" for the operations of the Water Guy's business:

    a. the Water Guy used a sliding schedule for the deliveries which were the very lifeblood of the business; the integrated ERP/CRM/e-commerce solution had to conform to this Requirement;

    b. the Water Guy needed to track the Water Guy's Rentals (and other equipment) by serial number and be able to provide the Water Guy with "on-demand" histories for the same;

    c. the NetSuite Software had to automatically process credit card payments immediately when they became due from the Water Guy's customers; and

    d. the NetSuite Software had to recognize that charges for Rentals were charged on a number of differing billing cycles, one of which was a custom billing cycle, in addition to monthly and quarterly cycles.

25. During the following months, representatives of the Water Guy questioned NetSuite about the functions, features and capabilities of the NetSuite Software and its ability to meet all of the Requirements. Many of these communications were in written exchanges, including e-mails, or confirmed in writing after the fact.

26. Finally, in June 2016, the Water Guy demanded written assurances as to the capabilities of the NetSuite Software and that the NetSuite Software would, in fact, meet or exceed all of the Requirements.

27. NetSuite responded, in writing, to the Water Guy's written list of Requirements.

28. In its written response to 11 pages of detailed Requirements from the Water Guy, NetSuite responded to the listed Requirements by stating: "Yes, In Scope" to the vast majority of Requirements. The Water Guy understood the statement "Yes, In Scope" to mean that the NetSuite Software, as it would be provided to the Water Guy would have the functions and/or features required to fulfill the specific Requirement referenced. Regarding other Requirements, NetSuite responded that NetSuite required the assistance of a "partner" to satisfy the Requirement or that the Water Guy would need to use some off-the-shelf product with the NetSuite Software to fulfill the specified Requirement.

29. In addition to the written answers to the specific questions from the Water Guy, NetSuite also completed a 12-page Excel spreadsheet (the "Requirements Spreadsheet") which identified the software modules or programs in the NetSuite

5

Software that would fulfill the Water Guy's Requirements.  Here, again, NetSuite indicated, in writing, that the NetSuite Software would fulfill the largest number of Requirements. Others were to be fulfilled with the assistance of its "NetSuite Certified Partner."

30. NetSuite represented that it had established a network of "NetSuite Certified Partners" that offered software solutions or services which had been tested and approved by NetSuite to operate with the NetSuite Software.

31. NetSuite recommended that the Water Guy engage the Descartes Systems Group, Inc. ("Descartes"), one such "NetSuite Certified Partner," to "optimize" portions of the NetSuite Software.

32. NetSuite subsequently removed Descartes from the project.

33. After removing Descartes from the project, NetSuite directed that the Water Guy should engage HighJump Software I, Ltd.("HighJump") and Upaya – The Solution, Inc. ("Upaya") – each a "NetSuite Certified Partner" – to assist NetSuite in the implementation of the NetSuite Software at the Water Guy.

34. Subsequently, NetSuite presented draft agreements and statements of work for signature by the Water Guy, and representatives of the Water Guy addressed yet additional questions to NetSuite and received additional written responses that the Water Guy believed to confirm that the functions and features in the NetSuite Software, once implemented by NetSuite in accordance with the statements of work, would be able to fulfill the Water Guy's Requirements excepting only those Requirements that NetSuite had indicated, in writing, were "Not In Scope."

35. On August 31, 2016, and in reliance upon the repeated representations of NetSuite as to the functions and features of the NetSuite Software contained in NetSuite's responses to the Water Guy's questions and the Requirements

Spreadsheet and the Water Guy's understanding resulting therefrom, the Water Guy entered into the following written agreements with NetSuite:

    a. NetSuite Subscription Services Agreement (attached as Exhibit A hereto);

    b. Estimate (attached as Exhibit B hereto);

    c. Professional Services Statement of Work (NetSuite Software implementation) (attached as Exhibit C hereto);

    d. Professional Services Statement of Work (Implementation of e-Commerce features) (attached as Exhibit D hereto); and

    e. Consulting Services Statement of Work (attached as Exhibit E hereto).

The foregoing are referred to herein, collectively, as the "NetSuite Agreement."

36. The Water Guy, at the direction of NetSuite, also entered into written agreements with NetSuite Certified Partners HighJump and Upaya.

37. In the months that followed, the Water Guys learned the following:

    a. The NetSuite Software did not contain many of the functions and features necessary to fulfill the Requirements and which NetSuite had represented were part of the NetSuite Software.

    b. NetSuite was unable to modify or create "work-arounds" to the NetSuite Software to enable the NetSuite Software, at all or at any acceptable additional cost to the Water Guy.

    c. The NetSuite Software did not have the functions and features necessary to fulfill even the Core Requirements (described in Paragraph 24) that NetSuite agreed that it had.

    d. NetSuite had knowingly misrepresented the capabilities of the NetSuite Software and the NetSuite Certified Partners.

    e. That NetSuite had not tested (or even examined) the solutions and services offered by its so-called "NetSuite Certified Partners."

    f.   That the software that was promised to the Water Guy by NetSuite and HighJump was not even released and would not, in any event, provide all of the functions or features promised by NetSuite and HighJump, if ever released.

    g.   That the added capabilities that were to be developed by Upaya were unnecessary because these were already provided in the NetSuite Software.

38.    Upon information and belief, and contrary to the representations of NetSuite, NetSuite had no knowledge or experience in the route sales businesses like that of the Water Guy.

39.    In fact, NetSuite eventually suggested that the Water Guy needed to incorporate functions and features of RMA into the NetSuite Software in order to fulfill all of its Requirements, including, the Core Requirements.

40.    The Water Guy never used the NetSuite Software except to evaluate it and to determine that it could never be used in the Water Guy's business.

41.    Through the date of filing of this Complaint, the Water Guy has paid NetSuite the sum of $267,202.72.

42.    Notwithstanding the foregoing facts, NetSuite has demanded that the Water Guy pay additional sums (the "Additional NetSuite Charges") for the NetSuite Software.

43.    Through the date of filing of this Complaint, the Water Guy has paid $42,647.59 to HighJump but has never received any of the contracted-for software or services from HighJump.  HighJump has also demanded that the Water Guy pay additional sums.

44.    Through the date of filing of this Complaint, the Water Guy has paid Upaya $9,000.00 but has never received any of the contracted-for software or services.

45. On December 7, 2017, the Water Guy initiated the dispute resolution procedure set forth in the NetSuite Agreement.

46. On March 14, 2018, executives of the Water Guy participated in a meeting with representatives of NetSuite in an attempt to resolve its dispute with NetSuite.

47. At the conclusion of the teleconference, counsel for NetSuite stated that NetSuite would make a proposal to the Water Guy to resolve the dispute.

48. Despite its attempts to obtain the promised proposal, the Water Guy received no further communications from NetSuite regarding the resolution of the dispute.

49. NetSuite has left the Water Guy with no alternative but to bring this action to recover its damages and cancel the Additional NetSuite Charges.

## CAUSES OF ACTION

### First Cause of Action
### (Breach of Contract)

50. The Water Guy repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth therein.

51. Pursuant to the NetSuite Agreement, NetSuite agreed to provide NetSuite Software which included the functions and features required to fulfill the Requirements excepting only those Requirements that NetSuite had indicated, in writing, were "Not In Scope."

52. Pursuant to the NetSuite Agreement, NetSuite also agreed to provide services required to "implement" the NetSuite Software such that it would operate in such a way as to provide the functions and features required to fulfill the Requirements excepting only those Requirements that NetSuite had indicated, in writing, were "Not In Scope."

SL1 1537722v4 106578.00018

53. NetSuite failed and refused to provide NetSuite Software which included the functions and features required to fulfill the Requirements excepting only those Requirements that NetSuite had indicated, in writing, were "Not In Scope."

54. In so doing, NetSuite materially breached the NetSuite Agreement.

55. NetSuite failed and refused to provide services required to effectively "implement" the NetSuite Software such that it would operate in such a way as to provide the functions and features required to fulfill the Requirements excepting only those Requirements that NetSuite had indicated, in writing, were "Not In Scope."

56. In so doing, NetSuite materially breached the NetSuite Agreement.

57. The Water Guy performed all of its obligations under the NetSuite Agreement until NetSuite materially breached the NetSuite Agreement, thereby relieving the Water Guy of any further obligation under the NetSuite Agreement.

58. As a consequence of the foregoing breaches of the NetSuite Agreement, the Water Guy has incurred substantial damages in amounts to be proven at trial.

## Second Cause of Action
### (Breach of Warranty)

59. The Water Guy repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth therein.

60. In the NetSuite Agreement, NetSuite warranted that the Service provided to the Water Guy would achieve the functionality described in the User Guides applicable to the Service procured by the Customer.

61. NetSuite failed and refused to provide the Service to the Water Guy such that it would achieve the functionality described in the User Guides applicable to the Service procured by the Customer.

62. In so doing, NetSuite materially breached the foregoing warranty.

10

63. NetSuite expressly and impliedly warranted to the Water Guy that the services provided to the Water Guy would be performed in a professional and workmanlike manner.

64. NetSuite failed and refused to provide services performed in a professional and workmanlike manner.

65. In so doing, NetSuite materially breached the foregoing warranty.

66. As a consequence of the foregoing breaches of warranty, the Water Guy has incurred substantial damages in amounts to be proven at trial.

### Third Cause of Action
### (Negligent Misrepresentation/Concealment)

67. The Water Guy repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth therein.

68. In its dealings with the Water Guy, NetSuite had a duty to act in a truthful and forthright manner.

69. In dealing with the Water Guy, NetSuite represented to the Water Guy that the Mid-Market Edition was suitable for use by – and was, in fact, being effectively used by – a large number of industries including "food and beverage" and "transportation and logistics".

70. In dealing with the Water Guy, NetSuite represented to the Water Guy that it had experience in providing the NetSuite Software to businesses that were similar and in the same industry as the Water Guy.

71. In dealing with the Water Guy, NetSuite represented that it had established a network of "NetSuite Certified Partners" that offered software solutions or services which had been tested and approved by NetSuite to operate with the NetSuite Software.

SL1 1537722v4 106578.00018

72. In dealing with the Water Guy, NetSuite represented to the Water Guy that the NetSuite Software had the functions and features necessary to fulfill the Requirements excepting only those Requirements that NetSuite had indicated, in writing, were "Not In Scope."

73. When NetSuite made these representations of material fact, NetSuite had no reasonable grounds for believing them to be true.

74. NetSuite made such representations recklessly or, at least, negligently.

75. NetSuite's failure to disclose the true facts or the lack of basis therefor and/or to conceal the true facts or the lack of basis therefor misled the Water Guy and has cost the Water Guy substantial time, money and resources.

76. NetSuite made these representations with the intention of inducing the Water Guy to act in reliance thereupon.

77. The Water Guy did, in fact, rely upon these representations to its detriment.

78. The Water Guy's reliance upon these representations was justified under the circumstances.

79. As a proximate result of the actions of NetSuite as herein alleged, the Water Guy has been injured in a manner and in an amount to be proven at trial.

**Fourth Cause of Action**
**(Fraudulent Inducement of Contract; Fraud)**

80. The Water Guy repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth therein.

81. NetSuite represented to the Water Guy that the Mid-Market Edition was suitable for use by – and was, in fact, being effectively used by – a large number of industries including "food and beverage" and "transportation and logistics".

12

82. NetSuite represented to the Water Guy that it had experience in providing the NetSuite Software to businesses that were similar and in the same industry as the Water Guy.

83. NetSuite represented that it had established a network of "NetSuite Certified Partners" that offered software solutions or services which had been tested and approved by NetSuite to operate with the NetSuite Software.

84. NetSuite represented to the Water Guy that the NetSuite Software had the functions and features necessary to fulfill the Requirements.

85. When NetSuite made these representations of material fact, NetSuite knew them to be false.

86. NetSuite made these representations with the intention of inducing the Water Guy to enter into the NetSuite Agreement in reliance thereupon.

87. The Water Guy did, in fact, rely upon these representations in entering into the NetSuite Agreement.

88. The Water Guy's reliance upon these representations was justified under the circumstances.

89. The Water Guy was fraudulently induced by NetSuite to enter into the NetSuite Agreement.

90. As a consequence of the foregoing, the Water Guy is entitled to rescind the NetSuite Agreement and recover damages from NetSuite, including punitive damages.

## Fifth Cause of Action
### (Claim for Rescission under California Civil Code § 1689(b))

91. The Water Guy repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth therein.

13

92. The Water Guy is entitled to rescind the NetSuite Agreement pursuant to California Civil Code § 1689(b)(1) in that the consent of the Water Guy to its terms was "…given by mistake, or obtained through fraud…exercised by or with the connivance of [NetSuite]…"

93. The Water Guy is entitled to rescind the NetSuite Agreement pursuant to California Civil Code § 1689(b)(2) in that the consideration for the obligation of the Water Guy has become void.

94. The Water Guy is entitled to rescind the NetSuite Agreement pursuant to California Civil Code § 1689(b)(3) in that the consideration for the obligations of the Water Guy has failed in a material respect.

95. The Water Guy is entitled to rescind the NetSuite Agreement pursuant to California Civil Code § 1689(b)(4) in that the consideration for the obligation of the rescinding party, before it was rendered to the Water Guy, failed in a material respect.

96. The Water Guy is prepared to return to NetSuite anything which the Water Guy received related to the NetSuite Agreement.

97. As a consequence of the rescission of the NetSuite Agreement, the Water Guy is entitled to receive the return of all sums which the Water Guy paid to NetSuite in connection with the NetSuite Agreement.

SL1 1537722v4 106578.00018

## Sixth Cause of Action
### (Request for Declaratory Relief)

98. The Water Guy repeats and re-alleges each and every allegation of the foregoing paragraphs as though fully set forth therein.

99. In view of the actions of NetSuite as aforesaid, the Water Guy is excused from performing any further obligations that may arise, including, but not limited to, paying all or any portion of the Additional NetSuite Charges.

100. The Water Guy is therefore entitled to a declaration by this Court that the Water Guy is relieved of any further obligations that may arise under the NetSuite Agreement, including, but not limited to, paying all or any portion of the Additional NetSuite Charges.

### PRAYER FOR RELIEF

WHEREFORE, the Water Guy prays that this Court enter judgment in favor of the Water Guy and against NetSuite, awarding the following:

1. Compensatory damages;
2. Punitive damages under the Fourth Cause of Action;
3. Rescission of the NetSuite Agreement pursuant to California Civil Code § 1689(b) or otherwise according to law;
4. Declaring that that the Water Guy is relieved of any further obligations that may arise under , including, but not limited to, paying all or any portion of the Additional NetSuite Charges;
5. Costs of suit and attorneys' fees, if and to the extent permitted by law; and

6. Such other relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable

<p style="margin-left: 50%">STEVENS & LEE</p>

Dated: August 29, 2018

                                                     /s/ *Stacey A. Scrivani*
Stacey A. Scrivani (6129)
919 N. Market Street, Suite 1300
Wilmington, DE 19801
Ph.: (302) 425-3306
Fax: (610) 988-0812
sasc@stevenslee.com
*Attorneys for Plaintiff*

16

SL1 1537722v4 106578.00018

6. Such other relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable

STEVENS & LEE

Dated: August 29, 2018

/s/ *Stacey A. Scrivani*
Stacey A. Scrivani (6129)
919 N. Market Street, Suite 1300
Wilmington, DE 19801
Ph.: (302) 425-3306
Fax: (610) 988-0812
sasc@stevenslee.com
*Attorneys for Plaintiff*